IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARKUS CRAWFORD, #N-30639, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CASE NO. 12-cv-1101-JPG |
| ) | |
| MAJOR KALAHAN (KALAHER),[1] ) | |
| ASST. WARDEN HILLIARD, and ) | |
| UNKNOWN PARTY DEFENDANTS, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Shawnee Correctional Center ("Shawnee"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants deprived him of access to the courts, and subjected him to cruel and unusual punishment when they violated the prison policy regarding inmates on hunger strike.

More specifically, Plaintiff claims that on April 20, 2012, he was placed on room restriction after a disciplinary ticket was written on him (Doc. 1, p. 7). On April 23, 2012, he received a pass to go to the law library, but Defendant John Doe told Plaintiff that he could not leave his room due to the room restriction. Plaintiff protested that he had a federal court deadline to meet (*see* Doc. 1-1, p. 4), but Defendant John Doe continued to deny Plaintiff access to the law library. In protest of this denial, Plaintiff declared a hunger strike at approximately 9:30 a.m.

---

[1] Plaintiff's exhibits demonstrate that the proper spelling of Defendant Kalahan's name is "Kalaher." The Clerk shall be directed to correct the spelling.

the same day (April 23) (Doc. 1, pp. 4, 9).

After Plaintiff began his hunger strike, the John Doe Defendants (Correctional Officers) brought his lunch and dinner food trays anyway, sliding them into Plaintiff's cell on the floor. This action subjected Plaintiff to "cruel treatment," because the food was left on the floor "as if Plaintiff was a dog" (Doc. 1, p. 9).  Two days later (on April 25), Plaintiff spoke to a Lieutenant about his hunger strike.  The Lieutenant told Plaintiff, "They're not going to write up your hunger strike," and another John Doe Defendant said, "They don't care if you die" (Doc. 1, p. 8). Plaintiff then contacted family and friends outside the prison, who called the warden and other officials regarding the hunger strike.  Plaintiff was taken to a "seg watch cell" for a day.  *Id.*  He submits an "Offender Hunger Strike Tracking Form" (Doc. 1-1, p. 5), showing that the first documentation of the hunger strike was recorded at dinner time on April 25, 2012.  It also reflects that Plaintiff resumed taking meals at dinner time one day later (April 26).

Plaintiff filed a grievance on May 1, 2012, over the Defendants' failure to follow prison policy to document his hunger strike as soon as it began.  He claims that this failure could have put him in danger, because the lack of documentation meant that he was not monitored by medical staff for any problems that might have developed during his hunger strike.  The grievance was denied, based on Defendant Kalaher's statement that Plaintiff did not inform staff of his hunger strike until April 25 (Doc. 1, p. 9; Doc. 1-1, p.11).  The grievance response also notes that Defendant Kalaher removed Plaintiff's room restriction early, to allow him to access the law library.

Plaintiff further alleges that Defendant Hilliard attempted to cover up the failure to properly document the hunger strike, by offering a prison job to Plaintiff's cellmate in exchange

for his silence about the incident (Doc. 1, p. 8).

Under 28 U.S.C. § 1915A, the Court is required to conduct a prompt threshold review of the complaint. After fully considering the allegations in Plaintiff's complaint, the Court concludes that this action is subject to summary dismissal for failure to state a claim.

First, Plaintiff has no colorable claim for any denial of access to the courts (Count 1). "[T]he mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access *the courts*, and only if the defendants' conduct prejudices a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement has this right been infringed." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). Where the record shows that an inmate has filed motions and pleadings with the court, and cannot show any hindrance to his ability to pursue a meritorious claim, a claim cannot be maintained for denial of access to the court. See *United States v. Sykes*, 614 F.3d 303, 311 (7th Cir. 2010) (finding no deprivation of court access when defendant filed three motions to dismiss).

Plaintiff does not make a single allegation which would describe an actual or potential limitation on his access to the courts. Furthermore, an examination of the electronic docket in the case for which Plaintiff received the April 23 library pass shows that he requested and obtained a further extension of the court's deadline to file his pleading, and that case is still pending. *Crawford v. Beal, et al.*, Case No. 11-cv-1343 (C.D. Ill., filed Sept. 14, 2011) (available at www.pacer.gov; last visited Nov. 7, 2012). *See Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (a court may judicially notice public records available on government websites) (collecting cases). Count 1 shall be dismissed for failure to state a claim

upon which relief may be granted.

Plaintiff's claim for cruel and unusual punishment (Count 2) due to the violation of the hunger strike protocol is similarly without merit. The Court is not aware of any specific guarantee under the First Amendment, or any other constitutional provision, that protects inmate hunger strikes. The Seventh Circuit has frowned upon this type of coercive tactic. *See Freeman v. Berge,* 441 F.3d 543, 546 (7th Cir. 2006) ("[a] prison cannot be forced by such tactics to change an otherwise reasonable rule").

More to the point of Plaintiff's complaint, there is no Eighth Amendment claim where an inmate is not seen by medical personnel immediately after beginning a hunger strike, and the only effects are weight loss and discomfort. *Owens v. Hinsley*, 635 F.3d 950 (7th Cir. 2011) (no deliberate indifference to medical needs where, after 25 days on hunger strike, inmate is taken to medical ward). Here, Plaintiff was on his hunger strike for a mere two days (April 23 to 25) before the hunger strike was acknowledged and documented by prison staff. He was never taken for a medical checkup, because he ended the hunger strike after missing only two documented meals (although by Plaintiff's account, he actually missed nine or ten meals over a three to four day period). Either way, the length of time Plaintiff abstained from food was far less than the 25 days described in *Owens*. More importantly, Plaintiff does not claim that he suffered *any* discomfort, weight loss, or medical problems due to his self-imposed lack of food – he merely notes that he "could have" had medical issues such as diabetes or high blood pressure (Doc. 1, p. 9). Such speculation is insufficient to make out a colorable Eighth Amendment claim.

Furthermore, even if Defendants violated the prison policy regarding documentation of the hunger strike, such a violation does not give rise to a constitutional claim. A federal court

does not enforce state law and regulations. *Archie v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989); *see also Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001). It follows that any attempt to "cover up" the alleged misconduct similarly fails to state any federal claim.

Finally, insulting or offensive behavior by prison personnel, such as leaving Plaintiff's food trays on the floor or making derogatory comments, does not rise to the level of a constitutional violation. *See, e.g., Dobbey v. Ill. Dep't of Corr.*, 574 F.3d 443, 446 (7th Cir. 2009) ("harassment, while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment"); *Dewalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). For these reasons, Count 2 is also subject to dismissal.

**Pending motions (Docs. 3 and 5)**

Because this action shall be dismissed, Plaintiff's motion for appointment of counsel (Doc. 3) is **DENIED AS MOOT**.

Plaintiff's motion for copies at Doc. 5 also contains a request for a status report on the several cases Plaintiff recently filed in this Court. Plaintiff's motion (Doc. 5) is **GRANTED IN PART AND DENIED IN PART**. Specifically, the request for a copy of the complaint is **DENIED**. Copies of documents are mailed to litigants only upon prepayment of the $0.50 per page charge. *See* 28 U.S.C. § 1914(b); §(4) of The Judicial Conference Schedule of Fees. Should Plaintiff wish to order a copy of the complaint in this case (Doc. 1), the fee shall be $7.00 for 14 pages.

The request for status is **GRANTED** as follows. Plaintiff states in the motion that he mailed two distinct complaints together in the same envelope, but only one of them was filed (as

*Crawford v. Quigley*, Case No. 12-1079-GPM). The Clerk has re-examined all the documents submitted by Plaintiff, and has found that the second complaint referred to by Plaintiff was not filed because it appeared to be a duplicate of the complaint filed in Case No. 12-1079-GPM. That complaint has now been filed under Case No. 12-1135-MJR, *Crawford v. Quigley*. Thus, in addition to the instant case, the following other actions have been filed by Plaintiff, and are awaiting threshold review:

>*Crawford v. Quigley*, Case No. 12-1079-GPM (filed Oct. 9, 2012);

>*Crawford v. Casteel*, Case No. 12-1094-MJR (filed Oct. 15, 2012);

>*Crawford v. Cheeks*, Case No. 12-1096-MJR (filed Oct. 15, 2012);

>*Crawford v. Hilliard*, Case No. 12-1102-GPM (filed Oct. 15, 2012);

>*Crawford v. Quigley*, Case No. 12-1135-MJR (filed Oct. 30, 2012).

Plaintiff shall receive a copy of the Court's order in each case as soon as the initial review is completed.

**<u>Disposition</u>**

The Clerk is **DIRECTED** to correct the spelling of Defendant Kalahan's name to **KALAHER.**

This action is **DISMISSED** with prejudice in its entirety, for failure to state a constitutional claim upon which relief may be granted.

Plaintiff is advised that the dismissal of this action will count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently

investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents.  *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED:   December 3, 2012**

    *s/J. Phil Gilbert*
    **United States District Judge**